The first case is Andre Mark Nordlicht, and I understand we have one counsel appearing by Zoom. And we also have Judge Sack appearing by Zoom this morning. Judge Sack, can you hear me? I can hear you loud and clear, thank you, and happy morning to everybody. And I can hear you as well, too. So I think we're ready to begin. And Andre Mark Nordlicht. May it please the Court, Nate Kritzer on behalf of the appellants, Richard and Marissa Stabenauer. This appeal is about whether the Chapter 7 trustee took automatic ownership of claims secured by judicial liens that my clients obtained more than 90 days before bankruptcy was filed. The courts below ruled that he did, and allowed the trustee to bargain away my clients' secured claims. The Bankruptcy Code does not allow this, and we are asking this Court to reverse those rulings, vacate the orders below, and remand for further proceedings. If you think the Bankruptcy Code does not allow that, then how do you explain and interpret section 363 F4 on which the trustee relied? Section 363 F4 refers to a sale of property of the estate free and clear of liens. But that section presumes that the trustee actually owns the property. And in this case, what actually happened was a settlement of claims that my clients had asserted with additional terms requiring the trustee to dismiss the cause of the action, dismiss the whole complaint, and vacate the liens. So it goes far beyond what 363 would allow, and far beyond what 363 F4. But the language of the statute has no such limitation. It just says, where such interest is in a bona fide dispute, that's the only limitation. So, but it requires in the first instance that what is being dealt with is property of the estate. And this is not, for example, a sale of, you know, property. So for example, if the debtor had a house, and there's a lien over that house, and the lien is in dispute, under 363 F4, that house could be sold free and clear of the lien. The problem here is my clients brought a complaint before there was ever a bankruptcy. They obtained liens in support of their claims. And as we've asserted throughout our papers, those liens and those claims are their property. And it is not the trustee's prerogative, in the guise of a 363 sale, or in the guise of a settlement, to settle away those claims over my client's objections. There's nothing that permits that. And if you help me understand, I understood that pre-judgment attachment applies property to a creditor's judgment if he prevails in court. And so if that's right, then these liens or attachments wouldn't beget your client's property. So what am I misunderstanding? So, your honor, there are a number of courts that have looked at the question of whether an attachment that has been levied on by the sheriff is a judicial lien. Except for one case in 1985 in Delaware, and then one case that Indicta favorably cited it in the Southern District in 1987. Every court has held that a pre-judgment attachment is a judicial lien. And there are a number of good cases, examples of that cited at pages 29 through 30 of our brief. In rewind power by the Ninth Circuit. One that's particularly responsive to your honor's concern is in re-mentana by the District of Connecticut. And that court looked at this argument that because the lien is in co-ate, it is not a judicial lien. Because it's not complete, for your honor's point, that it has to be pursued to judgment. Because in co-ate, it's not a lien. The court explicitly rejected that argument. And the reason is very clear. The sections 101, 36, and 37 of the bankruptcy code include in co-ate liens in the definition of lien. And that's even in the legislative history. As the court in Montana notes, and also in relying on this court's opinion in Vienna Properties. Where the in co-ate nature of that lien does not make it something other than a lien. And every case, again, other than those two that were back in the 80s, has reached that conclusion. And that's the correct conclusion. Because if you look at the language of section 101, 36 of the bankruptcy code, it says that a judicial lien is not simply a judgment lien or an execution lien. It includes any lien secured by judicial process, including sequestration, levy, or any other legal or equitable process. It's a broad definition, not a narrow one. So why wasn't it subject to the 363 sale by the trustee? Because the nature of the order below was not in the nature of a 363 sale. It was in the nature of a settlement. Settling away the claims, taking away the claims, depriving my clients of their rights to assert the claims. And I don't think there's any case, perhaps the trustee will cite one. I don't think there's any case that allows that under the guise of a 363 sale. It's a very far reach from kind of the core case of here's a house with a lien. The lien's in dispute. Sell the house, the proceeds go to the estate, the lien's attached to the proceeds. Okay, we get it. That's straightforward. That's a normal 363 sale. What happened is very far afield from that here. We had asserted claims pre-petition. Because we had asserted claims pre-petition, my clients had brought causes of action and secured those causes of action with judicial liens. And the relevant sections of the code for this are really sections 544 in particular. Because section 544 gives a very specific allocation of rights between the trustee and creditors after the bankruptcy is filed. And the trustee does get a judicial lien. The trustee has the rights of a judicial lien holder who gets a judicial lien on the date of the bankruptcy filing. And because our judicial lien happened four or five months before the filing and outside of the 90 day window under section 547 where the trustee could fairly freely void a lien, our rights are superior to the trustee under that lien. So whether the lien is in COE, whether it is still subject to further litigation below in the form of the alter ego, assertions by climate brought or otherwise, does not change the fact that under the bankruptcy code's division of rights between the trustees and the unsecured creditors, my client's rights are superior under New York law. Is it the fact that you were proceeding in state court, and correct me if I'm misunderstanding, under an alter ego or fraudulent conveyance theory, in essence mean that you had a judge, a $15 million owed by Nordlich based on the arbitration and you were going after that money as a creditor. But on a theory that had been transferred to others, and doesn't that mean that you're in no better position? Why does that mean you're in no better position than another creditor that is owed money by Nordlich? Sure, and I think your honor's questions go to the St. Paul decision, the Tronox decision by this court, so I'm glad your honor asked that question. So the reason is, those cases do not address a case involving a secured creditor. Where the rights between the estate and the creditor are fundamentally different. And in particular, in St. Paul, I mean, those cases dealt with the facts in front of them under state law. They're not limited to their facts, but they are limited to the bankruptcy code. And what St. Paul said on page 72 of the decision was, our decision today goes no further than to say that causes of action that could be asserted by the debtor are property of the estate and should be asserted by the trustee. As should causes of action, such as those that fall under 11 U.S.C. sections 544, 547, and 548. So really, at the end of the day, there is nothing in the bankruptcy code that says that a trustee automatically gets to assert all rights such as alter ego. The right comes from section 544, and I see I'm almost out of time. That section does not allow the trustee to take over a secured claim. Thank you. Good morning, and may it please the court. Lon Seidman with the firm LaMonica Herbst and Maniscalco for Mark Tulis, the chapter seven trustee of the estate of Mark Nordlicht and Impelli herein. I'll start with where we left off, and then I'll take just a couple minutes to try to reframe the issues, which I think are what need to be decided by the court today. On the issue of whether the bankruptcy court took away these claims. The bankruptcy court didn't take away anything. The claims were removed to bankruptcy court, and therefore put within the jurisdiction of the chapter seven trustee. However, as our opposing counsel pointed out, these were 90 days pre-partition. The Staten Island's claims, why didn't those survive getting into the bankruptcy estate and continue to be viable? The claims that were removed into the bankruptcy court, potentially they were viable. There was going to be protracted litigation about the viability of the claims. They were certainly disputed by the defendants who are also appellees herein. And the question became for the trustee, what should the trustee do about these claims? And what the trustee did after extensive discussions with counsel and with the appellants and with the appellees and with the bankruptcy court in a series of discussions and a series of applications was decide that it would be in the best interest of the bankruptcy estate to not spend years and years and years of litigation over the merits of those claims and the merits of those defenses. And the trustee entertained an offer to settle those claims. The bankruptcy court never said, and in fact the bankruptcy court squarely disavowed the notion that the bankruptcy court was adjudicating the liens or who has standing to assert those claims. It's playing from the record, which is the bankruptcy court hearing transcript. It's at appendix 292, where bankruptcy court, Judge Drain, said that the issue of standing was a risk that would be on the buyer who is going to be buying those claims. There was no adjudication that the claims were going to be successful or were going to be defeated, nor was there any adjudication that these attachment liens were valid or invalid. That issue also needs to wait another day. If I could briefly reframe what I think are the key issues for this court to consider on this appeal, there are really only two. And that is, as Judge Pooler mentioned in the opening remarks, what about 363 F4? That's the first question. Did the bankruptcy court abuse its discretion by authorizing the Chapter 7 trustee to sell these assets, here, their claims? It is not. This is not the first time that a trustee has assigned transferred claims. This is not unusual at all. The question is, in this instance, could it happen over the objection of the appellants who were claiming to have a lien with respect on those claims? A pre-petition. I'm sorry? A valid pre-petition. They were claiming to have a valid pre-petition lien. That lien was squarely disputed by the defendants. It was admitted on the open record at the hearing in April of 2021, before the bankruptcy court, by appellant's counsel, that those liens are in dispute. The issue there is, just real briefly, the CPLR says if you want to have a valid and make sure that the sheriff serves the order of attachment personally, as if it's serving a summons on the individual, the defendant, or the garnishee. And the issue that is in dispute is whether or not the CPLR was complied with. The defendants, the appellees who are not the trustees say, it didn't happen, the lien is invalid. Of course, the appellants are going to dispute that. The trustee doesn't want to spend the next five years litigating all these claims. The trustee decided, in his business judgment, to go ahead and sell these claims. There was active back and forth bidding. The original proposal to the bankruptcy court, seeking approval from the bankruptcy court, was to sell these claims for $1.5 million to the eventual buyers, who eventually bought for $2.5 million, plus a $2.5 million indemnity. Which, let me talk about the indemnity. The fact of the indemnity, it's the linchpin to the offer that was approved by the bankruptcy court. Which order, as we know, was affirmed by the district court. That $2.5 million indemnity is the key thing to look at to be able to see why there has not yet been any adjudication of these attachment liens, these inchoate liens, because that issue is to be litigated down the road. And if the appellants win, if they prove that they have a valid lien on all those claims that were sold, what they will have is a security interest in the $2.5 million sale proceeds that the trustee received. And the trustee was concerned that at the end of the day, this all may be, this entire transaction may just be a way to deliver to the appellants money without any benefit to the other creditors of the estate. And so what happened was, the trustee, through counsel, negotiated for a backstop, for a protection, for an indemnity in the event that that happens. If, at the end of the day, the appellants prove the validity of their attachment lien, they will have a right to the $2.5 million that the estate received from the sale of the claims. And then the estate will be protected because there's a commitment by a non-party, by a non-debtor, by a non-appellee to pay the estate $2.5 million so that there'll be a benefit to creditors. The appellants can only achieve the $2.5 million. I'm sorry? The most that the appellants can get if they're successful on the lien issue can only get $2.5 million. Well, the bankruptcy code says that when you have a secured claim, you are secured to the extent of the value of the collateral. If these claims were worth more than $2.5 million, someone should have come to court and offered more than $2.5 million, the appellants thought $1.5 million was too low. The original proposal was $1.5, the appellant stepped up and said, I'll pay you $2 million. The trustee said, I don't want to go forward with this $1.5 million sale, you know why? It's simple math. $2.0 million is better than $1.5, and then guess what? The bidding continued, and the trustee received another offer. First for $2.2 million from the eventual buyers, which the trustee said, not good enough, because I'm still going to have to fight the $200,000, this isn't going to do it for me. But eventually, they came up with $2.5 million. And the bankruptcy court said, on the hearing, at the hearing, in the record, who wants to offer more? Because if you think you have a claim that's really worth more than the $2.5 million that you'll be secured to at the end of the day, now's your chance, offer $2.7, offer $2.8, offer $2.6. And on the record, appellant's counsel said, no. We think that this sale ought not be approved for the $2.5 million, we think our offer is better. The bankruptcy court disagreed. The bankruptcy court went through an exhaustive, detailed analysis of the factors that control that decision. From this court's decision in the Iridium case, there's seven key factors. The bankruptcy court canvassed them all and decided that at the end of the day, it was an appropriate exercise of the trustee's business judgment to decide that $2.5 million is more than $2 million, and the settlement of these claims, rather than the continued litigation about the merits of the claims. Both of those amounts are much lower than the arbitration award. That's correct. That the Stadtmowers won, that was $14 million. That's correct. And that happens every day. And if someone wanted to come and pay the trustee $14 million, we would have loved nothing more. And if they proved up the validity of their claim, they'd be secured dollar for dollar. But the bankruptcy code is very straightforward. Section 506 of Title 11 of the US Code says that a secured claim is secured to the extent of the value of the collateral. Here, the collateral is the claims, and the value of the claims was determined through an auction process, which happens every day, which was fair and open, to which the appellants were not only on notice, but they were active participants. And we respectfully submit it was no abuse of discretion for the bankruptcy court to say that it was a fair exercise of the trustee's business judgment to go forward with this. Tell me why the trustee isn't bound under 363 by the fact that these were pre-petitioned, more than 90 days pre-petitioned. So the issue of them being more than 90 days simply means that there would be no basis for a trustee to avoid a claim as a preferential transfer because it's within 90 days of the filing of the petition date. Respectfully, that's not at issue at here at all. The bankruptcy court was presented with the issue of 363 allows a sale of assets. And 363 F4 says that a sale of assets can be authorized over the objection of a creditor who alleges that it has a secured claim if that claim is in dispute. And here, the record makes it 100% clear that the appellant's claim is in dispute. It wasn't decided, there's at least six citations to the record, all over the record that I could offer you, but I don't want to belabor the point where it is abundantly clear that there has been no decision by the bankruptcy court or the district court deciding whether or not, yes or no, do they have a valid lien into the $2.5 million of sale proceeds. That's an open question for another day. It is not, there has been no adjudication of that issue. The two issues, again, was the sale authorized under 363 and was it a fair exercise of the trustee's business judgment under bankruptcy rule 9019 to settle these claims for $2.5 million. And in order to meet that threshold, all it needs to be is above the lowest prong of the range of reasonableness. It is an extremely deferential standard to the trustee, as well as, of course, an extremely deferential standard to the bankruptcy court, an abuse of discretion standard, when the bankruptcy court approves a motion under rule 9019. We respectfully submit that the bankruptcy court order should be affirmed. If the court has any additional questions, I'm happy to answer. Otherwise, I'll rest here.  Thank you. Thank you, Your Honor. First, I want to thank the court for permitting me to appear remotely. This was not my first choice. Secondly, I'd like to focus during my short time on the issue that I think is not being viewed or is being slightly askew. And I believe- Could you just, let me just interrupt at the start and ask you to speak up just a little bit to make sure everyone can hear. Yes, Your Honor, I'm sorry. What I said was I'd like to focus during my time on an issue that I think is being viewed slightly askew. And we believe it is fundamentally determinative of appellant's claims. And it's really not even in dispute. And that is, who has ownership of fraudulent conveyance and alter-fugal claims, when those claims were made by a reported creditor in state court and advanced in a bankruptcy file? But there was no claim that this was a fraudulent conveyance, was there? There was no claim. If there was a claim, there is a claim that there was fraudulent conveyances, Your Honor, in the state court, yes. Not the Alpatrol award. What was the fraudulent conveyance? No, no, no. The award itself, Your Honor, was an award for a direct claim that this creditor had against the debtor. But the issue here is a separate action that was commenced by the creditor in state court against non-credit, non-debtor parties claiming that there was fraudulent conveyance of the debtor's assets to those entities, or that those entities were the alter-egos of the debtor. And you're representing those parties. That's who you're representing, correct? Most of them, yes. Correct. Correct. There's other co-counselors that represent the individual ones, but I represent most of them. So, I think that the fundamental issue, and I think the issue before this point right now is where there is a claim of alter-ego in the state court, a creditor obtains an attachment on non-debtor property, which case is then transferred to the bankruptcy court, who owns the underlying claims to alter-ego or fraudulent conveyance. And I think that that issue is really not in dispute for a couple of reasons. First of all, it's been very established by this court's prior determinations. For example, in the Calc case, which is 8F3130, court specifically held that such claims belong to the trustee and only to the trustee. That's based upon the theory that if a claim is a general one with no particular lines of injury, rise in fraud. And if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert that claim, and the creditors are bound by the outcome of the trustee's action on those claims, whether that be by disposition or settlement. In fact, in the Tronex case, which is 855F384, this court held that only a trustee has standing who has served claims based upon fraudulent conveyance or alter-ego liability. Creditors are precluded from pursuing those claims unless the trustee abandons them. So the conclusion that the trustee owns the fraudulent conveyance and alter-ego claims, it's really unassailable, not only in this circuit, but in almost every circuit. And appellants acknowledge that to be the case in the bankruptcy court for two reasons. First, they not only attempted to have their attorney appointed a special litigation counsel to represent the estate in pursuing those claims, but they also tried to purchase those claims directly from the trustee. So appellants don't seriously challenge the basic concept that trustee owns the claims. Instead, what they assert here is, and this is where I think the view is slightly askew, or the focus is askew. Instead of asserting that they don't challenge the basic concept, but they say there's no prior decision of this court that has ruled on the question of whether a trustee eschews ownership of alter-ego and fraudulent transfer claims, which a specific creditor secured by an attachment, court of attachment name, based upon the same claim before the bankruptcy filing. They appear to be arguing, with no citation of authority, that the rule that a trustee owns the alter-ego and fraudulent conveyance claims evaporates when an individual creditor obtains an attachment lead on property owned by non-debtors based upon that claim. But in so arguing, they conflate a situation where a creditor has an individualized claim to a debt owed by the debtor, but only that creditor, which is secured by a prior attachment. Taking it to its logical conclusion, the appellant's argument would turn the bankruptcy fundamentals on their head. It would basically throw out the entire structure of the bankruptcy code. That's because, since a trustee owns alter-ego and fraudulent conveyance claims, the trustee has the ability under the code to sell or compromise those claims. If a creditor can run the state court, obtain an attachment based upon not an individualized claim, but rather a claim belonging to all creditors, and thereby divest the trustee of its ability to prostitute such claims, and handle the estate, the trustee no longer has the basic power that the code would do it. We've devolved into the pre-code chaos of individual creditors being able to usurp the right of other creditors by state court action. While clearly a creditor is able to shift the priority of his individual claim from being unsecured to secured by such maneuvers, that does not and cannot possibly divest a trustee of its ability to pursue claims beneficial to the creditors or creditors, i.e., alter-ego or fraudulent conveyance claims. All that determines, if you go to state court, the other lien is the order of distribution, the proceeds of the trustee's efforts. Here, if appellant's theory is accepted, however, it would entirely divest the trustee of that ability, instead of transferring it to a single creditor who can pursue the alter-ego and fraudulent conveyance claims on his own behalf. That, I suggest, your honors, is an absurd outcome. So the real question is not whether the trustee had the power to compromise or sell the alter-ego and fraudulent conveyance claims. Clearly, it did. But rather, who is entitled to the proceeds of the sale of such claims and in what priority order? And that issue, as counsel correctly pointed out, although Judge Drain expressed strong views as to that, has yet to be determined below. Appellants still have the right, if they can do it consistent with rule 11, to claim that they are entitled to the entirety of the sale rights. And in fact, the estate is protected, as counsel pointed out, because if appellants are successful, a non-party has given security by way of identification. While we intend to move the benches in court to discharge what we consider to be an enforceable lien claim, as soon as this court rules on this appeal, the fact is that the sale approval order not in any way adversely affects what the appellants claim they are entitled to, which is that priority of the proceeds of the sale. Thus, Your Honor, we respectfully submit that the sale order entirely lawfully, appropriately disposed of this matter, and the district court's affirmation of the same, as well as the bankruptcy court's sale order, should be affirmed in all respects. Unless the court has any other questions, I'll conclude my presentation. Thank you, Mr. Levine. We'll hear rebuttal. Thank you. I'll try to be brief. I would appreciate if I could have a little bit of extra time since counsel went over. So first of all, I'll pick up where we left off. As far as who owns claims, that is absolutely in dispute. That's been briefed up extensively to this court. It was briefed up below. And counsel says that what we're saying is that, quote, the rule that the trustee owns the alter ego or fraudulent transfer claims would, quote, evaporate. But neither Tronox nor St. Paul said that there was a rule that the trustee owns the fraudulent conveyance or alter ego claims. What both of those cases did, recognizing that it's a difficult question, I think in Tronox, the court even said it's difficult to determine who owns which claims in a bankruptcy. And looking at the circumstances of that case and the law of that case, which did not involve an detachment, the court concluded that under Delaware and Pennsylvania law, the alter ego claims did belong to the trustee. So it is in dispute. There is no basis. There's no rule under the bankruptcy code that says the trustee gets the alter ego claims. The basis the trustee can assert really is section 544. Section 544 specifically says the trustee gets the rights to assert avoidance claims of an unsecured creditor. A creditor holding an unsecured claim does not give the trustee the right to usurp secured creditor rights. Now, it's interesting to contrast that position with what the trustee's counsel said. The trustee's counsel said the bankruptcy court never said the bankruptcy court was adjudicating the liens or who has standing to assert them. Well, if that's the case, why is the trustee being allowed to dismiss the case and vacate the liens? If we don't know who owns them, why did the bankruptcy court enter an order saying and directing that the trustee should dismiss the whole case? They didn't think it was worth it to litigate those issues. Well, I'm sorry. I understand, Your Honor, to the point of, you know, the business judgment question, but there's a separate question which comes in first, which is who has the right to assert the claims? The trustee is saying that the bankruptcy court didn't say, and yet the bankruptcy court gives the trustee the right and directs the trustee under the settlement agreement to dismiss the complaint that my client brought. The trustee did not bring that complaint, and the trustee is being given the right and, in fact, being directed to dismiss it. So that is a puzzling position at best. Just a couple of other issues I want to touch on. So there's a statement that there is no established lien, there's no established claim. Under Section 502 of the Bankruptcy Code, it is crystal clear. A claim that has been submitted as a proof of claim is allowed until objected to. Nobody has objected to my client's proof of claim. As we stand here today, it is deemed allowed. Finally, as to the indemnity point, and Your Honor was exactly correct, the most my client could get is $2.5 million. So the assertion is, well, it can only attach, it's only secured to the extent of the collateral, and the collateral is only worth $2.5 million. My client, as we've said at length in our briefing, we got liens over an 8,400-square-foot apartment on the Upper West Side, where the last comparable apartment in the line sold for, I think it was $16 million. So that's more comparable to the award that you had. Yeah, that's closer to the award that we had. Correct, correct. And counsel is stating that the lien was in dispute because there was some question about service. Well, the service question applies only to personal property. With respect to real estate, it is fully settled. Under CPLR section 1662.16, all the sheriff needs to do is file the lien with the county clerk. There's no dispute that happened. So there's no basis for the settlement that was made here. The settlement bargained away my client's secured claims. It takes away, it causes irreparable harm, causes my client's irreparable harm. They will not be able to recover the full value of their $14 million arbitration. So, counsel, do you argue that there really wasn't a bona fide dispute that gave the trustee the power to dispose of this? You don't think there was a bona fide dispute? You just said there's no dispute. Well, with respect to liens on the real estate, because counsel stood up and said the bona fide dispute related to these, the liens over personal property, right? So there are two, there are separate liens here. They're the liens over personal property. They've asserted, well, we weren't personally served with those. We've said, well, first of all, you never objected to that when you moved to set aside. And in any event, under CPLR section 320, it's like in federal court. You don't get to show up, argue the merits, then say later we weren't served, we dispute what happened. However, separate and apart from that, we have liens over real estate. And those liens over real estate are not affected by that argument at all. 62.16 provides simply that if you file the order of attachment with the county clerk where the real estate is located, that is the sheriff's levy. And there's no dispute that happened. Thank you, your honors. Thank you all. Very, very helpful on both sides.